IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM FRANK HILL, JR., | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 18-5564 |
| ANDREW M. SAUL,[1] | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**MEMORANDUM OPINION**

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE                                        August 5, 2019

Plaintiff William Frank Hill, Jr. appeals the decision of the administrative law judge ("ALJ") denying his claim for supplemental security income ("SSI"). He argues, among other things, that the ALJ who presided over his administrative hearing was not properly authorized to act under the Appointments Clause of the United States Constitution, *see* U.S. CONST. art. II, § 2, cl. 2, and that he is entitled to remand for his case to be heard before a constitutionally appointed ALJ. The Commissioner agrees that the ALJ's appointment was constitutionally deficient, but asserts that Hill has forfeited judicial review of this claim by failing to raise it at the administrative level. We disagree. Accordingly, we will remand this matter for a new hearing before a different, constitutionally appointed ALJ.[2]

---

[1] Andrew M. Saul became Commissioner of Social Security on June 4, 2019 and is therefore substituted for Nancy A. Berryhill as Defendant in this suit. *See* Fed. R. Civ. P. 25(d)(1); 42 U.S.C. § 205(g) (Social Security disability actions "survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office").

[2] This decision adopts reasoning previously articulated in this Court's decision in *Brunson v. Saul*, No. 18-5562, 2019 WL 3413520 (E.D. Pa. July 26, 2019). In reaching this result, I join the well-reasoned opinions my colleagues M.J.s Rice and Lloret, C.M.J. Caracappa, D.J.s Savage and

1

## I. FACTUAL AND PROCEDURAL HISTORY

Hill filed an application for SSI on June 11, 2015. (Doc. 9 at 169-76) (hereinafter "R."). His claims were initially denied on October 10, 2015. (R. 96.) He requested a hearing before an ALJ. His request was granted, and a hearing was held on November 30, 2017. He appeared, represented by counsel, and testified as to why he believed he was disabled. (R. 36-77.) In a written decision dated January 24, 2018, the ALJ denied Hill's application for benefits. (R. 70.) He requested review by the Social Security Appeals Council, which denied his request on November 5, 2018, rendering the ALJ's decision the "final decision" of the Commissioner for purposes of judicial review. (R. 1-3); *see* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981. At no point during the administrative process was the constitutionality of the ALJ's appointment called into question.

Hill commenced this action on December 27, 2018 and filed his brief in support of his request for review on May 1, 2019. (Doc. 11) ("Pl. Br."). The Commissioner filed its response on May 29, 2019 (Doc. 12) ("Def. Br."), to which Hill filed a reply on June 8, 2019 (Doc. 13) ("Reply"). The Commissioner filed a Motion to Stay on June 18, 2019 (Doc. 14), which Hill opposed in a response filed the same day. (Doc. 15.) We deny the Motion to Stay for the reasons

---

Kearney, and C.J. Connor of the United States District Court for the Middle District of Pennsylvania. *See Powell v. Saul*, No. 18-4881, 2019 WL 3458662 (E.D. Pa. July 30, 2019) (Caracappa, C.M.J.); *McWilliams v. Berryhill*, No. 18-5180, 2019 WL 2615750 (E.D. Pa. June 16, 2019) (Rice, M.J.); *Perez v. Berryhill*, No. 18-1907, Doc. 15 (E.D. Pa. Jan. 7, 2019) (Lloret, M.J.), *approved and adopted by* No. 18-1907, Doc. 21 (E.D. Pa. Apr. 23, 2019) (Savage, J.); *Culclasure v. Berryhill*, 375 F. Supp. 3d 559 (E.D. Pa. Apr. 16, 2019) (Kearney, J.); *Bizarre v. Berryhill*, 364 F. Supp. 3d 418 (M.D. Pa. Mar. 4, 2019) (Connor, C.J.), *appeal docketed*, No. 19-1773 (3d Cir. Apr. 17, 2019).

set out in a footnote order accompanying this opinion. The appeal is fully briefed and ripe for resolution.[3]

**II.    DISCUSSION**

Hill raises three claims of error, two which go to the merits of the ALJ's decision and one which raises the question of the ALJ's failure to be properly appointed under the Appointments Clause of the United States Constitution, U.S. CONST. art. II, § 2, cl. 2. This constitutional claim relies on the United States Supreme Court's holding in *Lucia v. SEC* that the Securities and Exchange Commission ("SEC") ALJs are "Officers of the United States" subject to the Appointments Clause. 138 S. Ct. 2044, 2049 (2018). Under the Appointments Clause, only the President, "Courts of Law," or "Heads of Departments" can appoint "Officers." U.S. CONST. art. II, § 2, cl. 2. As none of those actors had appointed the SEC ALJs in *Lucia*, the Supreme Court held that the appointment was in violation of the Clause.

*Lucia*'s reasoning has been applied to other ALJs, requiring that they, as "inferior officers," be appointed according to the Appointments Clause. *See, e.g.*, *Bank of Louisiana v. FDIC*, 919 F.3d 916, 921 (5th Cir. 2019) (FDIC ALJs); *Jones Bros., Inc. v. Sec'y of Labor*, 898 F.3d 669, 679 (6th Cir. 2018) (Department of Labor Federal Mine Safety and Health Review Commission ALJs); *Island Creek Coal Co. v. Wilkerson*, 910 F.3d 254, 257 (6th Cir. 2018) (Department of Labor Benefits Review Board ALJs). Applying this argument to SSA ALJs, Hill seeks remand to a different, constitutionally appointed ALJ, as the Supreme Court required in *Lucia*. 138 S. Ct. at

---

[3] Hill consented to my jurisdiction on January 18, 2019 (Doc. 6) pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 72, Local Rule 72.1, and Standing Order, In re: Direct Assignment of Social Security Appeal Cases to Magistrate Judges (Pilot Program) (E.D. Pa. Sept. 4, 2018) ("SSA Pilot Program"). As part of the SSA Pilot Program, the Commissioner "filed a General Consent form with the Clerk of Court indicat[ing] its general consent to Magistrate Judge jurisdiction on [Social Security] cases . . . subject to its reserved right to withdraw the consent in a given case and to withdraw its general consent." *Id.* at 1. The Commissioner has exercised neither option.

3

2055. The Commissioner concedes that the SSA ALJ who presided over Hill's hearing was not constitutionally appointed.[4] The Commissioner asserts, however, that Hill forfeited his claim by failing to raise it during his administrative proceedings. Hill argues that he was not required to raise this constitutional claim at the administrative level. The question before us is therefore limited to whether Hill "timely" raised his Appointments Clause challenge such that we may consider it upon judicial review.

### A. The general rule, its exceptions, and its application to SSA proceedings

We accept that, as a general rule, a nonjurisdictional legal claim must first be presented to the lower court if it is to be considered on appeal. In applying this proposition to the SSA ALJ Appointments Clause challenges, some courts have relied upon the limited language in the Supreme Court's *Lucia* opinion, which provides that "one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to relief." 138 S. Ct. at 2055 (internal quotation marks and citation omitted); *see McWilliams v. Berryhill*, No. 18-5180, 2019 WL 2615750, at *7 (E.D. Pa. June 16, 2019) (collecting cases). These courts have summarily rejected SSA ALJ Appointments Clause challenges not raised at the ALJ administrative level. *See, e.g., Garrison v. Berryhill*, 17-302, 2018 WL 4924554, at *2 (W.D.N.C. Oct. 10, 2018) ("To the extent Lucia applies to Social Security ALJs, Plaintiff has forfeited the issue by failing to raise it during his administrative proceedings."). We believe, as do a growing number of courts, that this emphasis on *Lucia*'s timeliness language is misplaced and should not lead to a summary rejection of Appointments Clause challenges not raised at the ALJ administrative level. We observe that there was neither a timeliness nor exhaustion question

---

[4] "For purposes of this brief, Defendant does not argue that SSA ALJs are employees rather than inferior officers." (Def. Br. at 17 n.4.)

raised as to *Lucia*'s constitutional challenge given that he raised it before the SEC's appellate body and in federal court. *See Bizarre v. Berryhill*, 364 F. Supp. 3d 418, 420-21 (M.D. Pa. March 4, 2019), *appeal docketed*, No. 19-1773 (3d Cir. Apr. 17, 2019); *see also Associated Mortgage Bankers, Inc. v. Carson*, 2019 WL 108882, at *5 (D.D.C. Jan. 4, 2019) ("*Lucia* did not define the scope of what constitutes a timely challenge, as there was no claim in *Lucia* that the challenge . . . was not timely raised."). In that respect, we are unwilling to accept the Commissioner's invitation to read *Lucia* as imposing a bright-line timeliness requirement on Appointments Clause challenges. As the court noted in *Bizarre*, "[t]he [*Lucia*] majority's statement as to timeliness was not a bright-line demarcation . . . it simply confirmed the obvious timeliness of the fully preserved and exhausted claim as presented." 364 F. Supp. 3d at 420-21. Our inquiry therefore must go beyond *Lucia*.

In *Freytag v. C.I.R*, the Supreme Court carved out an exception to the general rule that nonjurisdictional claims are forfeited if not raised during lower court proceedings. 501 U.S. 868, 878-80 (1991). Even though the petitioner had failed to raise his Appointments Clause challenge before the special trial judge of the United States Tax Court in the underlying proceeding, the Supreme Court concluded that "Appointments Clause objections to judicial officers [are] in the category of nonjurisdictional structural constitutional objections that [can] be considered on appeal whether or not they were ruled upon below." *Id.* at 878-79 (citing *Glidden Co. v. Zdanok*, 370 U.S. 530, 535-36 (1962)). The Court's conclusion was based on its observation that the petitioner's constitutional challenge was "neither frivolous nor disingenuous" and "goes to the validity of the very proceeding under review." *Id.* at 879. While acknowledging that "as a general matter, a litigant must raise all issues and objections at trial," the Court found that "the disruption to sound appellate process entailed by entertaining objections not raised below does not always overcome

5

what Justice Harlan called 'the strong interest of the federal judiciary in maintaining the constitutional plan of separation of powers.'" *Id.* (citing *Glidden*, 370 U.S. at 536). On those bases, the Court found the petitioner's untimely Appointments Clause challenge to be "one of those rare cases" in which judicial review was appropriate. *Ibid.*

Since *Freytag*, the Supreme Court "has proceeded on a case-by-case basis, determining whether the circumstances of the particular case warrant excusing the failure to timely object." *See In re DBC*, 545 F.3d 1373, 1380 (Fed. Cir. 2008). In light of the unique nonadversarial nature of SSA proceedings, we are persuaded that they constitute "those rare cases" in which judicial review is appropriate.

As a threshold matter, we recognize that the alleged defect in the SSA ALJ's appointment "impacts the validity of the proceeding" in that the ALJ, whose adjudication constitutes the "final decision" of the Commissioner, *see* 42 U.S.C. § 405(g), is an administrative officer not appointed in accordance with the United States Constitution. Adjudications conducted by such officers are nullities subject to rehearing. *See Lucia*, 138 S. Ct. at 2055.

In its discussion regarding the timeliness of the petitioner's constitutional claim, the *Freytag* Court was concerned principally with the "disruption to sound appellate process" posed by entertaining a claim not raised at trial. 501 U.S. at 879. As the court noted in *Bizarre*, however, "it is not clear that the *Freytag* Court contemplated exhaustion within administrative agencies" in its evaluation of the principles underlying the general rule of exhaustion. 364 F. Supp. 3d at 424. Here, those principles lose force.

We begin with the pragmatic, as the fact is that at the time of his hearing, which preceded the Supreme Court's *Lucia* decision by 6 months, Hill would have no reason to present an Appointments Clause challenge to his ALJ. The Commissioner has identified no authority to

suggest that SSA ALJs possessed authority to resolve Appointments Clause challenges at the time of Hill's hearing and in fact later disclaimed their authority to do so.[5] Soc. Sec. Admin EM-18003 REV (June 25, 2018) ("SSA lacks the authority to finally decide constitutional issue such as [Appointment Clause claims].").[6] Some courts have reasoned that the Commissioner could have cured an ALJ's defective appointment upon the pre-*Lucia* objection of any claimant, and point to the Commissioner's post-*Lucia* ratification of its ALJs appointments as evidence of the relief available to such a claimant. *See, e.g., Muhammad v. Berryhill*, 381 F. Supp. 3d 462 (E.D. Pa. May 23, 2019).[7] The *Muhammad* court suggests alternatively that the Commissioner might have assigned a different ALJ to preside over an objecting claimant's hearing. *See id.*

We are unpersuaded. As to the former contention, we agree that it is speculative to infer that *an ALJ* possessed the authority to rule on his own constitutional status by virtue of the Commissioner's subsequent ratification of the appointment. *See McWilliams*, 2019 WL 2615750,

---

[5] Within weeks of *Lucia*, the President of the United States issued an executive order noting that "some, and perhaps all, ALJs are 'Officers of the United States' and thus subject to the Constitution's Appointments Clause." Exec. Order No. 13,843, 83 Fed. Reg. 32,755 (July 10, 2018) ("Post-*Lucia* Exec. Order."). The Solicitor General then issued a memorandum explaining that, in a departure from the position it previously took in litigation, "[DOJ] no longer plans to argue that such ALJs are employees rather than inferior officers."). Memorandum from the Solicitor General, U.S. Dep't of Justice, to Agency Gen. Counsels, Guidance on Administrative Law Judges After Lucia v. SEC (S. Ct.) (July 2018). On July 16, 2018, the SSA Acting Commissioner then ratified the appointment of ALJs "to address any Appointments Clause questions involving SSA claims." Soc. Sec. Admin., EM-180003 REV 2, Important Information Regarding Possible Challenges to the Appointment of Administrative Law Judges in SSA's Administrative Process—UPDATE (2/6/2018). But as in *Lucia*, the ratification did not apply retroactively. *See* Post-*Lucia* Exec. Order. at 32,755.

[6] This emergency message was later replaced by Soc. Sec. Admin EM-180003 REV 2 (instructing SSA ALJs to acknowledge but not to review any Appointments Clause claims).

[7] Page numbers are not available on Westlaw for the district court's opinion in *Muhammad*; the cited text can be found in the third to last paragraph of the court's opinion.

at *6 n.11 ("[S]uch speculation as to potential outcomes does not supply the ALJ or Appeals Council with the authority to resolve those challenges.") It is equally speculative to conclude that the Commissioner would have revisited its ALJs' appointments upon Hill's or any other claimant's objection prior to the Supreme Court's opinion and prior to the President's executive order. As to the court's latter point, reassignment to a different ALJ would have been pointless in that every ALJ was, at the time, tainted with an unconstitutional appointment.

Moreover, it makes little sense to require an SSA claimant to raise a structural constitutional claim to an ALJ in that such a claim lies squarely outside an ALJ's area of expertise. *See Weinberger v. Salfi*, 422 U.S. 749, 767 (1975) ("[M]atter[s] of constitutional law [are] concededly beyond [SSA's] competence to decide."); *Bizarre*, 364 F. Supp. 3d at 424 (quoting *Califano v. Sanders*, 430 U.S. 99, 109 (1977)) ("Constitutional questions obviously are unsuited to resolution in administrative hearing procedures and, therefore, access to the courts is essential to the decisions of such questions."); *cf. Ryder v. United States*, 515 U.S. 177, 180 (1995) (United States Court of Military Appeals capable of determining constitutionality of Coast Guard Court of Military Review appointments).[8] We now consider whether any other authority supports enforcing

---

[8] The Commissioner cites *Elgin v. Dep't of Treasury*, 567 U.S. 1, 23 (2012) in support of its position that constitutional claims must be presented to an administrative agency to be properly preserved for appeal. (Def. Br. at 24.) *Elgin* is unavailing. *Elgin* involved the Civil Service Reform Act of 1978 ("CSRA"), 5 U.S.C. 1101 *et seq.*, which "established a comprehensive system for reviewing personnel actions taken against federal employees" and provided exclusive review before the Merit Systems Protection Board ("MSPB") and the Federal Circuit. *Elgin*, 567 U.S. at 5. The petitioner in *Elgin* challenged his employment discharge and brought related bill-of-attainder and sex discrimination claims in a complaint filed in the United States District Court for the District of Massachusetts. In affirming the district court's lack of jurisdiction to hear the claims given MSPB's exclusive review under the CSRA, the Supreme Court denied petitioner's argument that MSPB lacked expertise to review his constitutional claims, explaining that the MSPB could have addressed "the many threshold questions that may accompany a constitutional claim" in the employment context and therefore "avoid the need to reach his constitutional claims." *Id.* at 22-23. While a statutory scheme controlled in *Elgin*, we are presented with no such analogue here. *Culclasure*, 375 F.Supp.3d at 570-71 (distinguishing *Elgin*). No threshold questions accompany

8

an issue exhaustion requirement for an SSA ALJ Appointments Clause challenge beginning with an examination of the Supreme Court's decision in *Sims v. Apfel*, 530 U.S. 103 (2000).

### B. *Sims v. Apfel* and its application to these Appointments Clause claims

In *Sims*, the Supreme Court considered whether SSA claimants were required to exhaust issues before the SSA Appeals Council in order to preserve those claims for judicial review. In declining to find an exhaustion requirement at the Appeals Council level, the Court reasoned that no statute or SSA regulation supported imposing such an issue exhaustion requirement, *id.* at 107-08, and concluded that the unique nonadversarial nature of SSA proceedings counseled against judicially imposing an issue exhaustion requirement. *Id.* at 110-12. For reasons we cite within, we are convinced that the Supreme Court's rationale in *Sims* should similarly excuse a claimant who fails to raise a constitutional challenge to an ALJ's authority at the ALJ level.

1. Congress has not imposed a statutory issue exhaustion requirement for SSA proceedings

As the Supreme Court instructed in *Sims*, courts first look to statutory authority in determining the presence or absence of an issue exhaustion requirement. 530 U.S. at 103 ("[R]equirements of administrative issue exhaustion are largely creatures of statute."). For many agencies, Congress has expressly imposed such a requirement. *E.g.* 15 U.S.C. § 78y(c)(1) (requiring issue exhaustion before SEC); 29 U.S.C § 160(e) (same as to National Labor Relations Board); 15 U.S.C. § 79x (Public Utility Holding Company Act); 29 U.S.C. § 210 (Fair Labor Standards Act). SSA, conversely, has no such statutory mandate. *See Sims*, 530 U.S. at 108 ("[T]he Commissioner does not contend that any statute requires issue exhaustion in the request for review.").

---

Hill's constitutional claim nor could SSA's expertise be "brought to bear" on any questions inextricably related to his claim. C*f. Elgin*, 567 U.S. at 22-23.

## 2. SSA regulations do not impose an issue exhaustion requirement

The Commissioner argues that SSA regulations generally require a claimant to raise issues at the "earliest possible juncture" and that this language embodies an issue exhaustion requirement. (Def. Br. at 24) (citing, *inter alia*, 20 C.F.R. §§ 416.1433(a), 416.1439, 416.1440). Unlike statutory analogues in other agencies, however, these regulations do not explicitly require a claimant to raise an issue during his administrative proceedings to preserve it for federal review. *Cf.* 15 U.S.C. § 78y(c)(1) (SEC statute cautioning that "[n]o objection to an order or rule of the Commission . . . may be considered by the court unless it was urged before the Commission or there was reasonable ground for failure to do so."); *see also Bradshaw v. Berryhill*, No. 18-cv-100, 2019 WL 1510953, at *7 (E.D.N.C. Mar. 26, 2019) ("[T]he language the SSA uses in its regulations is similar to language courts have found to be inconsistent with the existence of an issue exhaustion requirement.").

While an SSA claimant must state the reasons he disagrees with an adverse disability determination in petitioning for ALJ review, 20 C.F.R. § 416.1433(a)(2), the issues before the ALJ are "the issues brought out in the initial, reconsidered or revised determination that were not decided entirely in [the claimant's] favor[,]" 20 C.F.R. § 416.1446(a), which can hardly be expected to include a constitutional challenge to the ALJ's authority. On the contrary, these issues are those germane to the disability application itself, most commonly in the form of objections to the agency's treatment of medical or vocational evidence or testimony. We acknowledge that an ALJ or any party may also raise new issues prior to the hearing, *id.* § 416.1446(b), but we understand this is designed merely to afford a claimant the opportunity to identify new disability-related evidence or testimony obtained *after* the written request for hearing but *before* the hearing itself. *See id.* (a new issue "may be raised even though it arose after the request for a hearing and

even though it has not been considered in an initial or reconsidered determination."). We therefore decline to read these regulations to impose the sweeping issue exhaustion requirement as the Commissioner contends. *See McWilliams*, 2019 WL 2615750, at *7 ("No matter how tortured the reading, the SSA regulations fail to squarely address the *Lucia* issue.").

3. <u>Judicially imposing an exhaustion requirement is inappropriate</u>

As the Supreme Court explained in Sims, "the basis for a judicially imposed issue-exhaustion requirement [in the administrative context] is an analogy to the rule that appellate courts will not consider arguments not raised before trial courts." 530 U.S. at 108-09. The analogy becomes strained, however, in the unique nonadversarial nature of SSA proceedings. *See id.* at 110 ("The differences between courts and agencies are nowhere more pronounced than in Social Security proceedings."). Unlike the typical adversarial nature of litigation, the "[SSA] ALJ's duty is to investigate the facts and develop the arguments both for and against granting benefits." *Id.* at 111; *see also* 20 C.F.R. § 404.900(b) (1999) ("[The SSA] conduct[s] the administrative review process in an informal, nonadversarial manner."). "Where the parties are expected to develop the issues in an adversarial administrative proceeding, it seems to us that the rationale for requiring issue exhaustion is at its greatest." *Sims*, 530 U.S. at 110. Conversely, in a nonadversarial administrative context "the reasons for a court to require issue exhaustion are much weaker." *Id.* at 109-10 ("[T]he desirability of a court imposing a requirement of issue exhaustion depends on the degree to which the analogy to normal adversarial litigation applies in a particular administrative proceeding."). In SSA's investigatory model, where the ALJ is primarily tasked with developing the claimant's case, the rationale for requiring issue exhaustion is not persuasive.

Courts which impose an issue exhaustion requirement at the SSA ALJ level have done so only with respect to issues directly within the ALJ's purview. In *Meanel v. Apfel*, for example, a

11

Social Security claimant sought to raise new labor statistics in her federal court appeal after admittedly failing to raise the same before the ALJ. 172 F.3d 1111, 1115 (9th Cir. 1999). The court held that she had failed to preserve the claim. *Id.* Similarly, in *Ginsburg v. Richardson*, a Social Security claimant in federal court claimed prejudice in the form of ALJ bias. 436 F.2d 1146, 1151-52 (3d Cir. 1971)*, abrogated in part by Sims*, 530 U.S. at 112. The court similarly found that she had forfeited her claim in that she had failed to raise it before the ALJ. Mandating exhaustion in these scenarios made sense in that the claims were squarely within the bailiwick of SSA and its ALJs. *See Meanel*, 172 F.3d at 1115 (noting that "the ALJ, rather than th[e] Court, was in the optimal position" to resolve the claimant's agency-specific challenge); *Ginsburg*, 436 F.2d at 1151-52 (noting how claimant could have contemporaneously requested for the ALJ to recuse himself from the hearing). Enforcing the general rule in those contexts accorded with its underlying principles. *See Wilson v. MVM, Inc.*, 475 F.3d 166, 173 (3d Cir. 2007) (administrative issue exhaustion "respect[s] executive autonomy by allowing an agency the opportunity to correct its own errors, provide courts with the benefit of an agency's expertise, and serve judicial economy by having the agency compile the factual record.") (internal quotation marks and citation omitted). These justifications are less persuasive in the context of constitutional questions like Hill's to which SSA ALJs are ill equipped to handle.[9]

We therefore conclude that Hill was not required to raise his constitutional claim before the ALJ to preserve it for judicial review. Even if he were so required, however, we would exercise our discretion to excuse the failure under *Freytag* in light of the unique circumstances of SSA proceedings and the nature of his constitutional claim.

---

[9] In this respect, the incentive to discourage the practice of "sandbagging" with issues of potential merit, *Freytag*, 501 U.S. at 895 (Scalia, J., concurring in part and concurring in the judgment), is absent where the adjudicator of the underlying proceeding is powerless to hear the claim.

## III. CONCLUSION

Hill's administrative appeal was adjudicated by an ALJ not appointed in accordance with the Appointments Clause of the United States Constitution. No statute or regulation required him to raise that claim before the ALJ or risk forfeiture. For the many reasons in which the SSA investigatory model differs from the traditional adversarial model, it would be inappropriate to impose a judicially created issue exhaustion requirement. Therefore, as in *Lucia*, Hill is entitled to remand for a new hearing before a different, constitutionally appointed ALJ. An appropriate order follows.[10]

/s/ David R. Strawbridge, USMJ
DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE

---

[10] We do not reach Hill's additional claims in that we have found a basis for remand and any alleged errors may be cured upon remand. *See Steininger v. Barnhart*, No. 04-5383, 2005 WL 2077375, at *4 (E.D. Pa. Aug, 24, 2005) (where basis for remand is found, additional arguments need not be addressed because ALJ may reverse his findings after remand).